**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION
Civil Action No. 7:15-cv-160**

**DANIELLE GORE SPIVEY**,

       Plaintiff,

v.

**DETECTIVE KEVIN NORRIS, in his
official and individual capacity;
LEWIS L. HATCHER, in his official
capacity as Columbus County Sheriff;
and WESTERN SURETY CO. as the
SURETY for the Columbus County
Sheriff,**

       Defendants.

|   |
|---|
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |
| ) |

**FIRST AMENDED COMPLAINT
(JURY TRIAL REQUESTED)**

      **NOW COMES** Plaintiff, Danielle Gore Spivey, by and through undersigned counsel,

pursuant to Rule 15(a)(2), amends her complaint as a matter of course and alleges the following:

**INTRODUCTION**

1.     Plaintiff is a citizen of Tabor City, North Carolina, who through no fault of her own,

became the victim of a personal vendetta by a Detective in the Columbus County Sheriff's

Office.

2.     Defendant Detective Kevin Norris wanted to be heavily involved in Plaintiff Danielle

Gore Spivey's life, to the extent of attempting to break up her relationship with her husband.

When his attempts to control and coerce Plaintiff into breaking up with her husband did not

work, Defendant Detective Kevin Norris then had Plaintiff arrested on felony and misdemeanor

charges involving an allegedly forged prescription, a prescription he did not see or access prior to

making the allegations. His actions, under color of State law, caused Plaintiff, a licensed nurse,

1

to be arrested and charged criminally, were the direct cause of her five month suspension from work, problems with the nursing board, and problems at home.

3.      In this action, Plaintiff seeks compensatory and punitive damages as well as injunctive relief, arising from 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and under North Carolina law and the North Carolina Constitution to redress Defendants' unlawful and unconstitutional conduct.

4.      Defendant Norris' actions, as alleged herein, constituted violations of the Fourth Amendment prohibition against unreasonable seizure for causing an arrest warrant to issue without probable cause and the wrongful and malicious use of criminal process, and were the direct and proximate cause of Plaintiff's economic loss, embarrassment and humiliation, and injury to her professional reputation.

5.      Defendant Norris' actions, as alleged herein, constituted violations of the Fourteenth Amendment right to due process which prevents government officials from abusing their power or using their power in a malicious vendetta against a private individual. Causing the arrest and criminal prosecution of an individual in retaliation for Plaintiff asserting her First Amendment right to freedom of association, and her liberty rights right to privacy and personal autonomy protected by the Due Process Clause of the Fourteenth Amendment.

6.      Defendant Norris' actions are in violation of the North Carolina Constitution, Article I, §19, as her arrest and malicious prosecution denied Plaintiff the equal protection of the laws of North Carolina.

7.      Defendant Lewis L Hatcher, Sheriff of Columbus County, had actual or constructive knowledge of Defendant Kevin Norris' actions, such that he knew or should have known Defendant Detective Norris was engaged in conduct that posed a pervasive and unreasonable risk

of injury to the Plaintiff, yet ratified Defendant Norris' behavior through inaction or omission showing a deliberate indifference to the practice of allowing officers to violate the constitutional rights of the citizens of Columbus County.

8.      Due to the actions of the Defendants, Plaintiff suffered economic loss and hardship, injury to her personal and professional reputation, and severe emotional distress. Plaintiff should be awarded compensatory and punitive damages, along with injunctive relief, for these violations of his constitutional rights and state law.

## PARTIES AND JURISDICTION

9.      Plaintiff Danielle Gore Spivey ("Plaintiff," or "Danielle") is a citizen and resident of Tabor City, Columbus County, North Carolina.

10.     Upon information and belief, Defendant Kevin Norris (individually "Norris" and collectively "Defendants") is a resident of Columbus County, North Carolina. At all times relevant to this action, Defendant Norris was employed as a Detective with the Columbus County, North Carolina Sheriff's Department and acting under the color of State law.  Defendant Norris is married to a local magistrate judge. Defendant Norris is being sued in his individual and official capacity.

11.     Upon information and belief, Defendant Lewis L. Hatcher (individually "Hatcher" and collectively "Defendants") is a resident of Columbus County, North Carolina.  Defendant Hatcher serves as Columbus County Sheriff, replacing prior Sheriff Chris Batten in January 2014. Defendant Hatcher is being sued in his official capacity.

12.     Upon information and belief, Defendant Lewis L. Hatcher, as the Sheriff of Columbus County, has consented to being sued in this action be either purchasing liability insurance and/or participating in a risk pool in a sufficient amount to effectuate a waiver of governmental

3

immunity. Furthermore, upon information and belief, a waiver of immunity has been effectuated by the purchase of a sheriff's bond by Defendant Lewis L. Hatcher.

13.    Upon information and belief, the Defendant Western Surety Company is a corporation organized and existing under the laws of South Dakota and is registered with the North Carolina Department of Insurance. The principal office is located in  Sioux Falls, S.D. and is engaged in the business of surety and insurance sales, and in the course of that business issues sheriff's bonds pursuant to N. C. Gen. Stat. §162-8, and has issued one for the Columbus County Sheriff Lewis L. Hatcher and/or prior Sheriff Chris Batten for the relevant time period.

14.    Upon information and belief, Defendant Hatcher and/or prior Sheriff Chris Batten have been the principal on the official sheriff's bond issued by Western Surety Company, as well as two liability policies, which Plaintiff is informed and believe were issued by Argonaut and NCAA.  Plaintiff is informed and believes Defendants have waived any governmental immunity to which they might be entitled by purchase of one or more policies of liability insurance providing coverage for the claims asserted herein.

15.    Original jurisdiction over this case is conferred upon this Court pursuant to 28 U.S.C. §1331, as this action arises under the United States Constitution and 42 U.S.C. §1983, and conferred upon this Court pursuant to 28 U.S.C. §1343(a) as this action is to redress the deprivation of the privileges secured under the United States Constitution, arising from actions of the Defendants taken under the color of State law.

16.    This Court has supplemental jurisdiction over the Plaintiff's State law claims pursuant to 28 U.S.C. §1367 as the State law claims are so related that they form part of the same case or controversy.

4

17.     Venue is proper in this District under 28 U.S.C. §1391(b), as the Defendants reside in this District, and the claims asserted herein arose in this District..

## FACTS

18.     Plaintiff Danielle Spivey is married to Jonathan Spivey ("Jonathan"), and have been since 2011. Plaintiff has one child with Jonathan and another child from a prior marriage, both which reside with Danielle and Jonathan.

19.     Danielle graduated from Southeastern Community College with an associate's degree in nursing in 2005 and became a Registered Nurse.  She worked as a registered nurse with Columbus Regional Medical Center until 2010, when she started working for Grand Strand Regional Medical Center ("Grand Strand Regional") in Myrtle Beach, South Carolina.  While at Grand Strand Regional, Danielle was named "Nurse of the Year" in 2012.

20.     Defendant Norris is married to a close friend of Georgianna Gore ("Georgianna"), Danielle's Mother. Defendant Norris took advantage of the friendship between his wife and Georgiana to insert himself into Danielle's life, which Danielle felt to be inappropriate.

21.     Danielle suffered from dental conditions that required oral surgery, and underwent several procedures, some performed by Dr. Brent C. Lawson, DDS ("Dr. Lawson"). As part of her post-operative treatment plans, Dr. Lawson prescribed Danielle pain-killers to address  her post dental treatment pain and discomfort.

22.     Defendant Norris contacted Danielle's parents stating Norris pulled Danielle's pharmaceutical records, and Danielle had a drug problem, specifically with prescription painkillers.  Detective Norris accused Danielle of having had prescriptions arranged to get painkillers and told Danielle that she should watch her step.

5

23.    Beginning in September, Detective Norris began contacting Danielle on her cell phone, on an almost daily basis.

24.    Defendant Norris told Danielle that Jonathan was an alcoholic and Norris could help Danielle help Jonathan with his problems, however, Danielle objected to his expressed interest and his excessive communications.

25.    Defendant Norris continued to contact Danielle and her family, sometimes on a daily basis. Jonathan Spivey finally told Danielle that Defendant Norris had to stop calling Danielle.

26.    On or about November 8, 2012 Detective Norris contacted Danielle at work and asked what time her husband would be away. On the same day, Detective Norris pulled Danielle's husband over at or about 6:25 pm, and had him ticketed for Driving While Impaired ("DWI"). The signature of Sergeant B. Potter appears on the DWI citation, not the signature of Defendant Norris. The District Court Judge asked who did the breathalyzer, and when it was discovered to be Detective Norris, the Judge granted Danielle's husband's motion to dismiss the DWI charge at the close of the State's evidence.

27.    On September 9, 2012 Detective Norris told Danielle Jonathan was selling pills, and that he was getting in trouble so Danielle should not talk to her husband. Defendant Norris' actions and statements caused Danielle to be afraid to talk with her husband Jonathan, so Danielle sent her husband away for a week. Detective Norris contacted Danielle daily to speak with Danielle, and even encouraged Danielle to send her husband away to a rehabilitation program out of state that would take three months.

28.    After Danielle let her husband return home, Defendant Norris would still contact Danielle approximately twice a week, telling Danielle she was messing up. On or about September 28,

Defendant Norris contacted Danielle and inquired as to whether she had spoken with her husband.

29. On or about September 28, 2012, SBI Agent Cecil Cherry contacted Danielle to inform Danielle there was a warrant for her arrest "for forging a prescription and trafficking." Detective Norris accused Danielle of having altered a prescription for Percocet written by Dr. Lawson, by changing the number of pills to be dispensed from 20 to 30, even though he never saw the original prescription.

30. Danielle responded to being informed about the warrant by turning herself in, and in December of 2012, was charged with a Misdemeanor Simple Possession of a Schedule II Controlled Substance, Felony Trafficking Opium or Heroin, and Felony Obtaining Controlled Substances by Fraud or Forgery.

31. Danielle's charges and her arrest were reported in The News Reporter, a Columbus County, North Carolina newspaper with a circulation of 10,000. The information published included her name and employment information, including the name of the hospital and her prior award for "Nurse of the Year" at the Grand Strand Hospital where she worked.

32. The District Attorney's Office offered Danielle the opportunity to enter an Alford Plea, a plea arrangement which would drop the Felony charges of Trafficking and Forgery/Fraud, leaving only the Misdemeanor Possession of a Schedule II Controlled Substance.

33. At all times Danielle has maintained her innocence. She has never admitted to any wrongdoing, and has remained steadfast in her position that she did not commit any criminal act nor alter her prescription.

34. However, feeling she had no choice, and to preserve her nursing license, on January 15, 2013, Danielle entered the Alford Plea in an effort to minimize her exposure to a potential felony

conviction and avoid the attorney fee costs of a protracted trial. The plea bargain arranged for a one-year probationary period coupled with a letter from the District Attorney's Office supporting the re-instatement of her Nursing License.

35.     Danielle's plea and probation information were published in The News Reporter, the Columbus County newspaper, and the Tabor City Tribune.

36.     Danielle willfully submitted to multiple drug screenings, at the behest of her employer and as a contingency of the 12-months of probation. Danielle's drug screens were negative for narcotics or other medications, as were prior drug screens conducted by her employer.

37.     After entering the Alford plea, Danielle requested her then-counsel to continue investigating the charges against her. On January 29, 2013, the Pharmacist who filled the prescription was subpoenaed by *duces tecum*. The Pharmacist produced Dr. Lawson's original prescription on February 18, 2013 which proved the prescription had not been altered; rather Dr. Lawson had mistakenly written the prescription for 30 pills instead of 20.

38.     Assistant District Attorney T. Heath Nance, SBI Agent Cecil Cherry, and Defendant Norris each inspected the original prescription, and Assistant District Attorney Nance thereafter filed a voluntary dismissal of all charges against Danielle on February 22, 2013. Upon the dismissal of the charges, Danielle's Probation Officer informed her that she was no longer on Probation, and was no longer required to meet the terms of her probationary agreement.

39.     Despite the charges against Danielle having been dismissed, the North Carolina Board of Nursing ("Nursing Board") notified Danielle on March 5, 2013 stating Danielle was under investigation for violations of the Nursing Practice Act, and her Alford Plea would be treated by the Nursing Board as Danielle failing to maintain minimum nursing standards.

8

40.     The Nursing Board letter also stated since Danielle declined to participate in the Board's

Chemical Dependency Discipline Program and denied having a chemical dependence problem,

Danielle could elect to proceed to an administrative disciplinary hearing, attend a binding

conference with a settlement panel, or accept the proposed disciplinary action of agreeing she

violated the nursing standards and be placed on probation. As Danielle committed no violation,

she maintained she should not be subjected to any discipline from the Board of Nursing.

41.     Danielle was suspended from work after her arrest for five months. When Danielle was

able to return to Grand Strand Medical, she had to return to a different position, as a staff nurse

instead of a charge nurse. The Charge Nurse position paid more money because of a pay

differential.   After her return, Danielle worked for three months as a staff nurse while she earned

back the trust of her employer and her fellow nurses.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF 42 U.S.C. §1983**
**(Norris, individually and in his official capacity)**

42.     Plaintiff re-alleges and incorporates paragraphs 1 through 41 as if more fully set forth

herein.

43.     Defendant Norris, in his individual and official capacity, are "persons" as that term is

used within the text of 42 U.S.C. §1983.

44.     The actions of Defendant Norris, under color of State law in his position as a Detective

with the Columbus County Sheriff's Office, and without just cause, were in violation of

Plaintiff's constitutional rights and as such constitute a violation of 42 U.S.C. § 1983 and Article

I, §19 of the North Carolina Constitution.

45.     Defendant Norris, acting under the color of State law as a sworn sheriff's officer, in an

attempt to separate Danielle from her husband, used police action against Jonathan by stopping

9

Jonathan for a DWI, to cause trouble between Danielle and her Husband. The DWI was dismissed at the end of the State's case.

46.     Defendant Norris, acting under color of State law as a sworn Sheriff's officer, pulled or accessed Danielle's prescription medicine record, without a bona fide specific investigation or lawful court order, or in the alternative, informed Danielle's parents he had accessed Danielle's prescription records to show that Danielle had a drug problem, violating Danielle's right to privacy and the confidentiality of her prescription drug records.

47.     Defendant Norris, acting under the color of State law as a sworn sheriff's officer, used police action against Danielle to retaliate against Danielle for communicating with her husband, by causing her to be arrested for felony and misdemeanor drug charges with no probable cause.

48.     Danielle's charges were dismissed upon receipt of the actual prescription, showing no forgery or change.

49.     Detective Norris' retaliatory and malicious actions violated her First Amendment right to Freedom of Association and infringe upon the right to Privacy held in her marriage.

50.     Defendant Norris's intentional or reckless disregard for the truth in purporting to investigate a forged prescription without obtaining the original prescription and in causing a warrant to issue for Danielle's arrest without probable cause violated the Fourth Amendment of the United States Constitution's prohibition against unreasonable seizure.

51.     Defendant Norris acted with malice, in a corrupt manner, and in willful, wanton, and reckless disregard for the rights of the Plaintiff in the harassment of Danielle and the retaliatory investigation and demand for prosecution of Danielle for spurious drug charges.

52.     It would be clear to a reasonable Sheriff's Detective that using the criminal process for personal vendettas violates the Plaintiff's constitutional rights, and would or should be aware that

the Fourth Amendment protects Danielle from unreasonable searches or seizures, including issuing arrest warrants with no probable cause.

53.     It would be clear to a reasonable Sheriff's Detective that using the criminal process for personal vendettas violates the Plaintiff's constitutional rights, and would or should be aware that the First Amendment protects Danielle's rights to freedom of association, and the Fourteenth Amendment protects Danielle's right to privacy and personal autonomy in her marriage.

54.     It would be clear to a reasonable Sheriff's Detective that using the color of State law to purportedly investigate and affirm such that an arrest warrant is issued for forgery of a prescription without evidence or probable cause, including the actual prescription, is a violation of Danielle's right to equal protection of the law under the United States and North Carolina Constitutions.

55.     As a direct and proximate result of Defendant Norris' breaches of Plaintiff's rights under the United States Constitution and the North Carolina Constitution, Article I, §19, constitute violations of 42 U.S.C. § 1983, all of which has caused Danielle Spivey harm and damages.

56.     Danielle Spivey has suffered severe and pervasive emotional and mental injuries, including but not limited to embarrassment, humiliation, and exhaustion. She has also suffered extreme financial damages, and continues to suffer such damages, as her professional reputation has been besmirched.

57.      Danielle Spivey has been damaged in that she has been forced to expend considerable time and resources in alleviating the injuries caused by Defendant Norris.

58.     Defendant's actions are the direct and proximate cause of damages to the Plaintiff in excess of $75,000.00, the exact amount to be determined at trial.

59. Because Defendant Norris did willfully violate 42 U.S.C. § 1983 with malice, corruption, and with wanton and reckless disregard for Danielle Spivey's rights, Danielle is entitled to be awarded punitive damages in an amount determinable at trial.

**SECOND CLAIM FOR RELIEF**
**MALICIOUS PROSECUTION & SEIZURE IN VIOLATION OF 42 U.S.C. §1983**
**(Norris, individually and in his official capacity)**

60. Plaintiff re-alleges and incorporates paragraphs 1 through 59 as if more fully set forth herein.

61. Norris, in his individual and official capacity are "persons" as that term is used in the text of 42 U.S.C. §1983.

62. Under color of law, Defendant Norris initiated a criminal investigation against the Plaintiff, accessing or acquiring copies of her prescription records, without probable cause or court order, and/or notifying Danielle's parents he accessed or acquired Danielle's prescription records and informed Danielle's parents that she had a drug problem.

63. Under color of law, Defendant Norris initiated a criminal investigation against the plaintiff, accessing or acquiring copies of her prescription records, without probable cause or court order, and insisted upon the arrest of Danielle on charges of Misdemeanor Possession of Schedule II Controlled Substance, Felony Trafficking, and Felony Forgery/Fraud, without obtaining the original prescription Norris claimed was forged.

64. There was no probable cause to investigate or prosecute Danielle, who had no prior criminal record and was only taking prescription medicine she had been lawfully prescribed post dental surgery.

65. Immediately prior to the purported investigation and arrest, Danielle had refused to send her husband out of state for three months at Norris' demand.

66.     Danielle was arrested for the charges, based upon Detective Norris' allegations Danielle had forged a prescription for Percocet, interfering with Danielle's liberty rights, when at the time of her arrest, Detective Norris had not seen or acquired the actual prescription he alleged was forged.

67.     Danielle agreed to an Alford Plea to reduce the charges and to avoid the economic loss of a trial, even though she steadfastly protested her innocence.

68.     The charge against Danielle was dismissed when Danielle's attorney subpoenaed the original unaltered prescription, terminating the criminal prosecution in her favor.

69.     Detective Norris' actions in alleging Danielle forged a prescription, done when Danielle began speaking to her husband without Norris' permission, were malicious and evidenced a reckless disregard or deliberate indifference to Danielle's constitutional rights.

70.     As a result of Detective Norris' actions, Danielle was wrongfully arrested and prosecuted, depriving Danielle of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

71.     Detective Norris used  the color of state law to conduct a malicious criminal investigation without probable cause and without securing evidence, including but not limited to the original prescription to determine if Danielle had in fact altered her Percocet prescription to unlawfully obtain Scheduled II narcotics without a prescription.

72.     This malicious use of legal process to retaliate against Danielle for not breaking up with her husband, in investigating and arresting Danielle Spivey for felony and misdemeanor criminal charges, was done without evidence, without probable cause, and in violation of her Constitutional right to Due Process of Law under the Fourth and Fourteenth amendments to the United States Constitution.

73. As a direct and foreseeable consequence of these deprivations, Danielle has suffered economic loss in the loss of her job and problems with her nursing license, emotional trauma, loss of liberty, loss of privacy, and irreparable harm to her reputation.

74. As a further consequence of Detective Norris' actions, Danielle was required to retain counsel to represent her in criminal proceedings and the nursing board proceedings.

75. Defendant Norris actions are the direct and proximate cause of damages to Plaintiff in excess of $75,000.00, the exact amount to be determined at trial.

76. Because Defendant Norris did willfully violate 42 U.S.C. § 1983 with malice, corruption, and with wanton and reckless disregard for Danielle Spivey's rights, Danielle is entitled to be awarded punitive damages in an amount determinable at trial.

**THIRD CLAIM FOR RELIEF**
**VIOLATION of 42 U.S.C. §1983 SUPERVISORY LIABILITY**
**(Hatcher, in his official capacity)**

77. Plaintiff re-alleges and incorporates paragraphs 1 through 76 as if more fully set forth herein.

78. Defendant Hatcher, in his official capacity, is a "person" as that term is used in the text of 42 U.S.C. §1983.

79. Defendant Hatcher, as Sheriff of Columbus County, supervises all officers within his jurisdiction, and as such, maintains the final policy-making authority for the Sheriff's Department and acts under the color of State law.

80. Upon information and belief, the Sheriff's has final training and supervisory authority, and contemporaneous actual or constructive knowledge through the chain of command about Detective Norris' actions and investigations.

81. As Detective Norris had already been involved with the dismissed DWI charge against Jonathan Spivey, Defendant Hatcher had actual or constructive knowledge that Defendant Norris

14

was engaging in a personal vendetta against the Spivey's, and reasonable supervisor would have checked to ensure any other charges were reasonable.

82.     Upon information and belief, Defendant Hatcher knew or should have known about Detective Norris' actions and ratified the conduct of Detective Norris through supervisory indifference or inaction and failure to supervise or train Norris.

83.     Upon information and belief, Defendant Hatcher knew or should have known about Detective Norris' accessing Danielle's prescription information without a bona fide criminal investigation or lawful court order, as the Sheriff of Columbus County would be responsible for training and supervision of his officers' use of the Prescription Drug reporting system managed by the Department of Health and Human Services, or other police access to prescription drug information.

84.     As a direct and foreseeable consequence of this lack of training and/or supervision, Danielle was deprived of her rights under the First, Fourth, and Fourteenth Amendments through the unauthorized access to her medical records, malicious investigation and arrest for felony and misdemeanor charges stemming from Detective Norris' unlawful acts.

85.     After the receipt from Plaintiff's counsel of the unaltered prescription, it would have been plainly obvious to a reasonable supervisory official that a violation of Danielle's constitutional rights had occurred. However, the Sheriff took no corrective action against Detective Norris or acted in the matter, continuing to allow Detective Norris power over Danielle in violation of her constitutional rights.

86.     By not taking disciplinary action against Detective Norris, Sheriff Hatcher endorsed or ratified the unconstitutional conduct, which shows an established custom or policy of failing to correct the unconstitutional conduct of officers in the Sheriff's Department.

87.    Defendant Hatcher's omissions, either in a failure to train Detective Norris in proper conduct and procedure, or failure to properly supervise Detective Norris; shows deliberate indifference to Danielle's constitutional rights, as Norris was able to access  Danielle's medical records without proper cause or lawful court order, share that prescription information with Danielle's parents in an attempt to cause her problems with her family, initiate a traffic stop of Danielle's husband in retaliation for Danielle not acquiescing to Detective Norris' demands, and eventually begin the malicious prosecution of Danielle over the alleged forged Percocet prescription which was, in reality, not forged.

88.    Defendant Hatcher, as the person with final policymaking authority, made a decision not to take corrective action against Defendant Norris for his actions against Danielle, creating a policy or custom of the Office of the Sheriff in Columbus County and allows Detectives to violate constitutional rights without penalty.

89.    As a direct and foreseeable consequence of these policy decisions, Danielle was deprived of her rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

90.    Defendant's actions are the direct and proximate cause of damages to the Plaintiff in excess of $75,000.00, in an exact amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**MALICIOUS PROSECUTION UNDER STATE LAW**
**(Norris, individually and in his official capacity)**

91.    Plaintiff re-alleges and incorporates paragraphs 1 through 90 as if more fully set forth herein.

92.    Defendant Norris wanted Danielle to stop speaking to her husband, and called her and her family regularly to be as involved in Danielle's life as he could be. Norris told Danielle her

16

husband was an alcoholic, and Norris could help Danielle with the problem. Norris advised Danielle to stay away from her husband.

93.     Defendant Norris called Danielle at work and asked her what time her husband would be away, then acting in his position as a Detective with the Columbus County Sheriff's Office, pulled over Danielle's husband in order to give him a ticket for DWI. The ticket was later dismissed at the close of the State's case.

94.     Defendant Norris used the issuance of Jonathan's DWI in his argument Danielle should send her husband away or not speak with her husband, using the legal process to hurt Danielle's relationship with her husband so Danielle would acquiesce to Norris' demands.

95.     Defendant Norris demanded Danielle not speak with her husband, frightening her enough that she sent her husband away for a week.

96.     When Danielle allowed her husband to return home, Defendant Norris had her arrested for allegedly altering a prescription for Percocet.

97.     Defendant Norris had no probable cause to believe Danielle had altered a prescription, as she had no criminal record and no drug problem, and was an award-winning licensed nurse.

98.     The only cause Defendant Norris had to investigate or charge Danielle was her refusal to stay away from her husband or send her husband out of State, as Norris had been regularly demanding Danielle to do.

99.     Defendant Norris acted with malice and vindictively when stopped Danielle's husband for DWI, and when he caused Danielle to be arrested for drug charges with no probable cause and without acquiring the prescription Norris claimed Danielle altered.

100.     Defendant Norris had not in fact checked the actual prescription to determine if the prescription had been altered before causing a warrant for Danielle's arrest to issue.

17

101.    After her arrest and Alford plea, when Danielle's counsel provided the original, unaltered prescription, the charges against Danielle were dismissed, such that the proceeding terminated in Danielle's favor.

102.    As a direct and foreseeable consequence of Defendant Norris' actions, Plaintiff has suffered the loss of her job for five months and economic damages arising from her employment, costs in defending against the criminal action and the actions by the Nursing Board, damages to her personal and professional reputation when the arrest and plea information were published in the newspaper, and mental injuries including the humiliation and embarrassment and anxiety causing a loss to Plaintiff's quality of life.

103.    Defendant's actions are the direct and proximate cause of damages to the Plaintiff in the excess of $75,000.00, the exact amount to be determined at trial.

104.    Due to Defendant's malicious, willful, and wanton conduct, Plaintiff should be awarded punitive damages to deter the defendant or others from committing these types of egregious and unlawful wrongful acts.

## FIFTH CLAIM FOR RELIEF
### ABUSE OF PROCESS UNDER STATE LAW
#### (Norris, individually and in official capacity)

105.    Plaintiff re-alleges and incorporates paragraphs 1 through 104 as if more fully set forth herein.

106.    Defendant Norris, as a Detective with the Columbus County Sheriff's Office, pulled or otherwise accessed Danielle's prescription information as part of a pattern of harassment of the Plaintiff.

107.    Defendant Norris, as a Detective with the Columbus County Sheriff's Office, repeatedly demanded Danielle stay away from her husband, Jonathan Spivey.

18

108.    Defendant Norris called Danielle at work and asked her what time her husband would be away, then acting in his position as a Detective with the Columbus County Sheriff's Office, pulled over Danielle's husband in order to give him a ticket for DWI. The ticket was later dismissed at the close of the State's case.

109.    Defendant Norris used the issuance of Jonathan's DWI in his argument Danielle should send her husband away or not speak with her husband, using the legal process to hurt Danielle's relationship with her husband so Danielle would acquiesce to Norris' demands.

110.    Defendant Norris demanded Danielle not speak with her husband, frightening her enough that she sent her husband away for a week. When Danielle allowed her husband to return home, Defendant Norris had her arrested for altering a prescription for Percocet.

111.    Defendant Norris had no probable cause to believe Danielle had altered a prescription, as she had no criminal record and no drug problem, and was an award-winning licensed nurse.

112.    The only cause Defendant Norris had to investigate Danielle was her refusal to stay away from her husband or send him out of State as he had been regularly demanding Danielle to do. Defendant Norris acted with malice when stopped Danielle's husband for DWI, and when he caused Danielle to be arrested for drug charges.

113.    Defendant Norris did not in fact check the actual prescription to determine if the prescription had been altered before causing a warrant for Danielle's arrest to issue.

114.    After her arrest and Alford plea, when Danielle's counsel provided the original, unaltered prescription, the charges against Danielle were dismissed, such that the proceeding terminated in Danielle's favor.

115.    The purported investigation and arrest of the Plaintiff was to achieve the result of intimidating the Plaintiff into separating from her husband, and not for any lawful purpose.

116.    As a direct and foreseeable consequence of Defendant Norris' actions, Plaintiff has suffered the loss of her job for five months and economic damages arising from her employment, costs in defending against the criminal action and the actions by the Nursing Board, damages to her personal and professional reputation when the arrest and plea information were published in the newspaper, and mental injuries including the humiliation and embarrassment and anxiety causing a loss to Plaintiff's quality of life.

117.    Wherefore, Plaintiff compensatory damages in an amount to be shown at trial, and punitive damages in an amount to be determined by the jury, to deter the defendant or others from committing these types of malicious abuse.

**SIXTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Norris, individually and in his official capacity)**

118.    Plaintiff re-alleges and incorporates paragraphs 1 through 117 as if more fully set forth herein.

119.    Defendant Norris' acted through his position in the Columbus County Sheriff's Office in pulling over and ticketing Danielle's husband and purporting to investigate Danielle's use of prescription drugs were to drive a wedge between Danielle and her husband and family.

120.    Defendant Norris' actions and demands for Danielle to stop speaking to her husband did in fact cause Danielle to send her husband away for a week.

121.    When Danielle allowed her husband to return home, Detective Norris had Danielle arrested on felony and misdemeanor charges for allegedly altering a prescription for Percocet.

122.    Defendant Norris had not investigated this claim, as he did not actually obtain the prescription from the drug store, who had the prescription on file.

123.    Defendant Norris had no probable cause for his actions, in that Danielle had no criminal record, no history of drug abuse, and was an award-winning licensed nurse.

20

124.    Danielle is informed and believes Defendant Norris pushed for her arrest in retaliation for Danielle allowing her husband to return home, such that the arrest was intended to cause her humiliation, anxiety, stress, and trouble with her family and her professional relationships.

125.    Defendant Norris' actions indicate a reckless indifference to the likelihood that his conduct would cause severe emotional distress, the loss of her job, the loss of her nursing license, and damage to her professional and personal reputation.

126.    Defendant Norris' actions were the direct and proximate cause of Danielle being suspended from her job, encountering difficulties with the Nursing Board, and the severe emotional distress involved with the criminal charges and economic difficulties, the damage to her personal and professional reputation, and the humiliation, embarrassment and anxiety in handling the situation.

127.    As a direct and foreseeable consequence of Defendant Norris' actions, Plaintiff has suffered the loss of her job for five months and economic damages arising from her employment, costs in defending against the criminal action and the actions by the Nursing Board, damages to her personal and professional reputation when the arrest and plea information were published in the newspaper, and mental injuries including the humiliation and embarrassment and anxiety causing a loss to Plaintiff's quality of life.

128.    Defendant's actions are the direct and proximate cause of damages to the Plaintiff in the excess of $75,000.00, the exact amount to be determined at trial.

129.    Due to Defendant's malicious, willful, and wanton conduct,  Plaintiff should be awarded punitive damages to deter the defendant or others from committing these types of egregious and unlawful wrongful acts.

## SEVENTH CLAIM FOR RELIEF
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Norris in his individual capacity, Harris in his official capacity)

130.     Plaintiff re-alleges and incorporates paragraphs 1 through 129 as if more fully set forth herein.

131.     Defendant Norris' acted through his position in the Columbus County Sheriff's Office in pulling over and ticketing Danielle's husband and purporting to investigate Danielle's use of prescription drugs were to drive a wedge between Danielle and her husband and family.

132.     Defendant Norris' actions and demands for Danielle to stop speaking to her husband did in fact cause Danielle to send her husband away for a week.

133.     When Danielle allowed her husband to return home, Detective Norris had Danielle arrested on felony and misdemeanor charges for allegedly altering a prescription for Percocet.

134.     Defendant Norris had not investigated this claim, as he did not actually obtain the prescription from the drug store, who had the prescription on file.

135.     Defendant Norris had no probable cause for his actions, in that Danielle had no criminal record, no history of drug abuse, and was an award-winning licensed nurse.

136.     Danielle is informed and believes Defendant Norris pushed for her arrest in retaliation for Danielle allowing her husband to return home, such that the arrest was intended to cause her humiliation, anxiety, stress, and trouble with her family and her professional relationships.

137.      Defendant Norris' actions indicate a reckless indifference to the likelihood that his conduct would cause severe emotional distress, the loss of her job, the loss of her nursing license, and damage to her professional and personal reputation.

138.     Defendant Norris' actions were the direct and proximate cause of Danielle being suspended from her job, encountering difficulties with the Nursing Board, and the severe

emotional distress involved with the criminal charges and economic difficulties, the damage to her personal and professional reputation, and the humiliation, embarrassment and anxiety in handling the situation.

139.   Defendant Hatcher, as Sheriff of Columbus County, supervises all officers within his jurisdiction, and as such, maintains the final policy-making authority for the Sheriff's Department and is responsible for the supervision of the officers in his department.

140.   Upon information and belief, the Sheriff's has final training and supervisory authority, and contemporaneous actual or constructive knowledge through the chain of command about Detective Norris' actions and investigations.

141.   As Detective Norris had already been involved with the dismissed DWI charge against Jonathan Spivey, Defendant Hatcher had actual or constructive knowledge that Defendant Norris was engaging in a personal vendetta against the Spivey's, and reasonable supervisor would have checked to ensure any other charges against Jonathan or Danielle were reasonable.

142.   Upon information and belief, Defendant Hatcher knew or should have known about Detective Norris' actions and ratified the conduct of Detective Norris through supervisory indifference or inaction and failure to supervise Norris.

143.   As a result of Defendant Hatcher's omissions and failures in training or supervising Detective Norris, Danielle was persecuted by a Detective in the Columbus County Sheriff's Office, arrested on false charges, suspended from work, which caused difficulty with her nursing license.

144.   Due to the direct and foreseeable actions by Defendant Norris, Plaintiff has suffered the loss of her job for five months and economic damages arising from her employment, costs in defending against the criminal action and the actions by the Nursing Board, damages to her

23

personal and professional reputation when the arrest and plea information were published in the newspaper, and mental injuries including the humiliation and embarrassment and anxiety causing a loss to Plaintiff's quality of life.

145.    Defendant's actions are the direct and proximate cause of damages to the Plaintiff in the excess of $75,000.00, the exact amount to be determined at trial.

146.    Due to Defendant's malicious, willful, and wanton conduct,  Plaintiff should be awarded punitive damages to deter the defendant or others from committing these types of egregious and unlawful wrongful acts.

**EIGHTH CLAIM FOR RELIEF**
**CLAIM UPON BOND PURSUANT TO N.C. G.S. §58-76-5**

147.     Plaintiff re-alleges and incorporates paragraphs 1 through 146 as if more fully set forth herein.

148.    Every person injured by the neglect, misconduct, or misbehavior in office of a sheriff may institute suit against the officer and their sureties upon the respective bond for the performance of their duties in office, making the officer liable to the person injured for all acts done by that officer by virtue of under color of that officer's office pursuant to N. C. Gen. Stat §58-76-5.

149.    Here Defendant Norris has injured Danielle by his misconduct and misbehavior in office, and both Defendant Norris and Defendant Hatcher have injured Danielle through their intentional and/or negligent acts, done under color of law through the Office of the Sheriff.

150.    At all times relevant to the acts and omissions set forth herein, Sheriff Hatcher and the prior Sheriff Chris Batten maintained an official bond, pursuant to N.C. Gen. Stat. § 162-8, issued by Western Surety Company.

151. Defendants have waived the defense of governmental immunity by and through the purchase of the official bond.

152. Plaintiff brings this action for the recovery of damages pursuant to N.C. Gen. Stat. §58-76-5.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court grant the following to the Plaintiff:

a) A trial by jury on all issues so triable;

b) The issuance of an injunction ordering the Sheriff's Office to designate procedures for Sheriff's Deputies or Detectives when charging individuals with whom there is or was a personal relationship;

c) The issuance of an injunction ordering the Sheriff's Office to provide training on harassment to all employees;

d) Damages in an amount to be established at trial as compensation for constitutional deprivations, past economic loss, loss of reputation, and expenses for defending against malicious prosecution;

e) Damages in an amount to be established at trial to punish defendants for the arbitrary and capricious, unlawful conduct that recklessly and callously disregarded Plaintiff's constitutional rights, to discourage defendants or other similarly situated law enforcement from engaging in similar misconduct in the future;

f) The cost of this action be taxed against defendants;

g) An award of reasonable attorneys' fees pursuant to 42 U.S.C. §1988(b);

h)  Such other and further relief as the Court deems just and proper.


Respectfully submitted this the 12th day of January, 2016.

**RANDOLPH M. JAMES, P.C.**


<u>/s/ Randolph M. James</u>
Randolph M. James,
N.C. State Bar No.  10,000
*Attorney for Plaintiff*
P.O. Box 20069
Winston-Salem, NC 27120
Telephone: (336) 724-7707
Facsimile: (336) 724-9722
E-mail: rmjames@rmjameslaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an attorney at law licensed to practice in the State of North Carolina, is the attorney for Plaintiff, and is a person of such age and discretion as to be competent to serve process.

That on the 12th day of January, 2016 he served a copy of the attached *First Amended Complaint* by:

Placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place(s) and address(es) stated below, which is (are) the last known address(es), and by depositing said envelope and its contents in the United States mail; and

The foregoing ***First Amended Complaint*** was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Bradley O. Wood | Norwood P Blanchard, III |
| James R. Morgan, Jr. | Crossley Mcintosh Collier Hanley & Edes, Pllc |
| Womble Carlyle Sandridge & Rice | |
| *A Limited Liability Partnership* | 5002 Randall Parkway |
| One West Fourth Street | Wilmington, NC 28403 |
| Winston-Salem, NC 27101 | Telephone: (910) 762-9711 |
| Telephone: (336) 728-7012 | Fax: (910) 256-0310 |
| Fax: (336) 726-6913 | Email: norwood@cmclawfirm.com |
| Email: bwood@wcsr.com | *Counsel for Defendant Kevin Norris in his* |
| Email: jmorgan@wcsr.com | *Individual Capacity* |
| *Counsel for Defendants Detective Kevin* | |
| *Norris In his official capacity, Lewis L.* | |
| *Hatcher, and Western Surety.* | |

**RANDOLPH M. JAMES, P.C.**

/s/ Randolph M. James
N.C. Stat Bar No. 10000
*Attorney for Plaintiff*
P.O. Box 20069
Winston-Salem, NC 27120
Telephone: (336) 724-7707
Facsimile: (336) 724-9722
Email: rmjames@rmjameslaw.com