IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-160-BO

| | | |
|---|---|---|
| DANIELLE GORE SPIVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| DETECTIVE KEVIN NORRIS, in his official and individual capacity; LEWIS L. HATCHER, in his official capacity as Columbus County Sheriff; and WESTERN SURETY CO., as the SURETY for the Columbus County Sheriff, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This cause comes before the court on defendants' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The appropriate responses and replies have been filed and the matters are ripe for ruling. For the reasons discussed below, defendants' motions are granted in their entirety.

BACKGROUND

Plaintiff filed this action on August 1, 2015, asserting seven claims arising out of alleged harassment by Detective Kevin Norris (Norris) of the Columbus County Sheriff's Office. On January 11, 2016, the Court allowed plaintiff to file an amended complaint and granted in part a motion to dismiss by Norris. Plaintiff's amended complaint asserts 42 U.S.C. § 1983 claims against Norris individually and in his official capacity for violation of plaintiff's Fourth, Fourteenth and First Amendment rights and malicious prosecution; against Sheriff Hatcher in his official capacity for supervisory liability under 42 U.S.C. § 1983; against Norris individually and in his official capacity for malicious prosecution, abuse of process, and intentional infliction of

emotional distress under state law; against Norris in his individual capacity and Sheriff Harris in his official capacity for negligent infliction of emotional distress under state law; and a claim against Western Surety upon bond under N.C. Gen. Stat. § 58-76-5. Defendants Norris in his official capacity, Harris, and Western Surety have filed a motion for summary judgment on all claims. Defendant Norris in his individual capacity has moved separately for summary judgment on all claims.

Plaintiff alleges that Norris is married to a close friend of plaintiff's mother and took advantage of this relationship to insert himself into plaintiff's life. Plaintiff further alleges that she became the subject and victim of a personal vendetta held by Norris, who, after attempting and failing to break up plaintiff's relationship with her husband, stopped plaintiff's husband on suspicion of driving while intoxicated and had plaintiff arrested on felony and misdemeanor charges involving an allegedly forged prescription for narcotic pain medication.

The facts as they relate to plaintiff's charge, arrest, and prosecution are as follows. Plaintiff saw Dr. Lawson, a dentist, on August 17, 2012, to address swelling which had occurred following a root canal performed by a different provider. Lawson Dep. at 40-42. Dr. Lawson noted in his chart that he prescribed plaintiff penicillin and twenty tablets of Percocet[1] 10/650 that day. *Id.* at 42. Plaintiff returned to Dr. Lawson's office on August 20, 2012, for a tooth extraction and was prescribed twenty tablets of Percocet. *Id.* at 47.

In the fall of 2012, Norris received information that plaintiff had tried to fill a prescription for narcotic pain medication at a CVS Pharmacy in Loris, South Carolina, and that the pharmacist could not verify the prescription as being legitimate. [DE 52 at 8]. Norris further

---

[1] The records reflect prescriptions either written or filled for Endocet or Percocet, both of which are brand name drugs containing a mixture of acetaminophen and oxycodone. *See* https://medlineplus.gov/druginfo/meds/a682132.htmlv (last visited 28 March 2017).

2

became aware of an allegation that plaintiff had passed a forged prescription at the Rite Aid Pharmacy in Whiteville, North Carolina in August 2012. *Id.* Norris referred the matter to State Bureau of Investigation (SBI) Agent Cherry for further investigation due to Norris' marriage to a close friend of plaintiff's mother. Norris Dep. 19; 39-40. Although Norris referred the matter to Agent Cherry, Norris continued to participate in the investigation, accompanying Cherry to interviews and meetings. *See generally* [DE 52].

Cherry reviewed plaintiff's pharmacy records and reviewed the original prescription from Dr. Lawson which had been filled at the Rite Aid Pharmacy on August 17, 2012. Cherry Dep. at 36-37; 61. Cherry determined that it appeared to him the prescription had been altered to reflect that thirty tablets of Endocet/Percocet had been prescribed as opposed to twenty tablets. *Id.* at 100. On November 6, 2012, Cherry and Norris spoke to Dr. Lawson, who told the investigators that his records reflected that twenty tablets of Percocet had been prescribed to plaintiff on August 17, 2012. [DE 52 at 43]. Cherry's notes also reflect that he and Norris interviewed Dr. Lawson a second time on November 29, 2012, at 11:10 a.m. regarding Dr. Lawson's general procedures when writing prescriptions. [DE 52 at 11-12]. On November 7, 2012, Cherry and Norris, along with an agent from the South Carolina Department of Health and Environmental Control, interviewed plaintiff at her place of employment in South Carolina. [DE 52 at 15-16]. Plaintiff denied altering a prescription but stated that her husband frequently took her Percocet pills for his own use without plaintiff's permission. *Id.*; Spivey Dep. at 70.

On November 19, 2012, an order was filed in Columbus County Superior Court directing Dr. Lawson to provide plaintiff's medical records to the Columbus County Sheriff's Office. [DE 52 at 18-19]. On November 29, 2012, Cherry and Norris met with Assistant District Attorney (ADA) Nance who, after hearing the recitation of the case, found that there was probable cause

3

to arrest plaintiff. ADA Nance told Cherry to seek warrants for plaintiff's arrest. Cherry Dep. 13, 24, 94-5. The same day, Cherry appeared before Magistrate G.L. Greene at 9:30 a.m. and provided as the complaining witness sworn testimony regarding plaintiff. Magistrate Greene determined that probable cause had been established and signed arrest warrants for plaintiff for unlawfully obtaining possession of Percocet by altering a prescription, N.C. Gen. Stat. § 90-108(a)(10), and unlawful possession of more than fourteen but less than twenty-eight grams of opiates. N.C. Gen. Stat. § 90-95(h)(4); [DE 52 at 57-58]. Also the same day, Cherry telephoned plaintiff to inform her of the outstanding warrants for her arrest and plaintiff later turned herself in. Spivey Dep. 74-76.

On January 15, 2013, plaintiff, represented by counsel, entered an *Alford* plea[2] to a reduced charge of misdemeanor possession of a Schedule II controlled substance. [DE 63-3 at 8-17]. Plaintiff understood that this outcome would allow her to keep her nursing license and be able to expunge her criminal record upon satisfaction of certain conditions under N.C. Gen. Stat. § 90-96. Spivey Dep. 80-81. Following entry of her plea plaintiff was sentenced to a term of probation. On February 22, 2013, a dismissal notice of reinstatement was filed dismissing plaintiff's misdemeanor simple possession conviction "per compliance to 90-96 conditions." [DE 63-3 at 6]. Plaintiff contends that, although the document does not indicate as much, her conviction was dismissed following production by her criminal defense attorney of the original

---

[2] "[A]n 'Alford plea' constitutes a guilty plea in the same way that a plea of *nolo contendere* or no contest is a guilty plea." *State v. Alston*, 139 N.C. App. 787, 792 (2000) (internal quotation and citation omitted); *see also North Carolina v. Alford*, 400 U.S. 25, 36 (1970).

When asked for this case to review the prescription that he wrote on August 17, 2012, Dr. Lawson stated that in his handwriting thirty tablets of Percocet 10/650 had been prescribed. Lawson Dep. at 56-57. Dr. Lawson further stated that he had not been shown the August 17, 2012, prescription by Cherry or Norris when they interviewed him, and that if he had he would have told them that it was in his handwriting and that he had written the prescription for thirty tablets, not twenty as was reflected in his chart. *Id.* at 57-59. Dr. Lawson could not recall whether when he spoke to Cherry and Norris they indicated that plaintiff was being investigated for having altered Dr. Lawson's prescription, and that if they had he would have asked to see the prescription from the pharmacy to ensure that there was not a mistake in his records. *Id.* at 62-63.

The facts as they relate to the stop of plaintiff's husband's vehicle are as follows. Norris has proffered evidence that while on patrol on November 8, 2012, the day after plaintiff was interviewed by Norris and Cherry at her workplace, Norris witnessed a car travel left of center and come close to hitting a bridge. Norris Dep. at 32. Norris initiated a vehicle stop, interacted with Mr. Spivey who was driving the car, noticed the odor of alcohol, and contacted the traffic team who then took control of the scene. *Id.* at 36. Plaintiff does not dispute that another deputy completed the stop and transported her husband to the county jail where his alcohol level was tested and he received a citation. Spivey Dep. at 28-9.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has

5

been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

I. Section 1983 claims against Norris in his official[3] and individual capacity

Plaintiff claims that Norris in his individual and official capacity violated her Fourth, First, and Fourteenth Amendment rights. In support of this claim, plaintiff alleges that Norris, acting under color of state law and in an attempt to separate plaintiff from her husband, used police action against plaintiff's husband to stop him for driving while intoxicated. Plaintiff alleges that acting under color of state law Norris accessed plaintiff's prescription medicine record without a bona fide investigation or court order, and that Norris used police action against plaintiff to retaliate against her for communicating with her husband by causing her to be arrested for felony and misdemeanor drug charges without probable cause.

*Fourth Amendment claim[4]*

---

[3] Claims against government officials in their official capacities are in all respects suits against the agency or government entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

6

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. Amd. IV. Where, as here, an individual was arrested pursuant to an arrest warrant issued by a neutral and detached magistrate, the seizure will be found to be unreasonable only if the officer did not have probable cause to seek the warrant. *Malley v. Briggs*, 475 U.S. 335, 344 n.7 (1986) (issuance of a warrant does not "break the causal" chain between the complaint and the arrest). The question is then "whether a reasonably well-trained officer in [Cherry's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id.* at 345. Probable cause is a result of a practical, common-sense consideration of all of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017). Probable cause "requires more than a bare suspicion" but less than evidence sufficient to convict. *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998). It is an objective standard which "turns on two factors: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Smith*, 848 F.3d at 253 (internal quotation marks and citation omitted); *see also Graham v. Gagnon*, 831 F.3d 176, 183 (4th Cir. 2016) ("we have repeatedly held that arrest warrants do not confer immunity if it was objectively unreasonable to conclude there was probable cause for the arrest."). Only the information known to the officer at the time he sought the arrest warrant is relevant. *Smith*, 848 F.3d at 253. Although the "shield of immunity" conferred by an arrest

---

[4] Plaintiff's second claim for relief against Norris alleges a claim for malicious prosecution and seizure in violation of 42 U.S.C. § 1983. Plaintiff's malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure. *See Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) ("there is no such thing as a '§ 1983 malicious prosecution' claim.").

warrant can be lost, "the threshold for establishing this . . . is a high one, and it should be." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012).

The undisputed facts which were known to Cherry at the time that he appeared before the magistrate are as follows. Cherry had been made aware of questionable circumstances involving plaintiff related to filling prescriptions for narcotic pain medication, Cherry had reviewed plaintiff's prescription history, Cherry had reviewed the original prescription presented by plaintiff to the Rite Aid pharmacy in Whiteville and believed that it had been altered, thirty tablets of Percocet/Endocet had been dispensed to plaintiff on August 17, 2012, by the Rite Aid pharmacy in Whiteville, the prescriber, Dr. Lawson, had informed Cherry that he had documented in plaintiff's chart that he (Lawson) had written plaintiff a prescription for twenty tablets of Percocet, and Cherry had spoken to plaintiff who denied that she had altered Dr. Lawson's prescription but had stated that her husband took her pain medication at times.

Even viewing the facts in the light most favorable to plaintiff, there is not a genuine issue of material fact as to whether Cherry's probable cause determination was objectively reasonable. Cherry had done sufficient investigation to form more than a bare suspicion that plaintiff had altered Dr. Lawson's prescription for Percocet to dispense thirty instead of twenty pills as prescribed. Although plaintiff takes issue with how the investigation began, and there is conflicting testimony regarding the role of the participants in the investigation and in the recollection of conversations which took place, Cherry's testimony and contemporaneous notes provide sufficient support for his probable cause determination. It is undisputed that whatever role Norris played in the investigation of plaintiff he was not the complaining witness who presented an affidavit to Magistrate Greene. And, as discussed above, although the issuance of the arrest warrant would not shield an officer if his proffered basis for the warrant was

8

objectively unreasonable, that "a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner . . .." *Messerschmidt*, 565 U.S. at 546. That plaintiff contends that the ADA when presented with the original prescription deemed the charge unsupported or that Dr. Lawson has stated in his deposition that if he had been shown the original prescription he would have confirmed that it was written for thirty tablets not twenty does not change this result. *See Herring v. United States*, 55.U.S. 135, 139 (2009) ("When a probable-cause determination was based on reasonable but mistaken assumptions, the person subjected to a search or seizure has not necessarily been the victim of a constitutional violation. The very phrase ' probable cause' confirms that the Fourth Amendment does not demand all possible precision." ); *Pierson v. Ray*, 386 U.S. 547, 555 (1967) (" [A] peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved" ).

Norris proceeding in his individual capacity raises qualified immunity as a defense to plaintiff's constitutional claims. Qualified immunity shields government officials from liability so long as they could reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341; *see also Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). A court employs a two-step procedure for determining whether qualified immunity applies that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).

Because Cherry's probable cause for arrest determination was not objectively unreasonable, Norris is entitled to qualified immunity in his individual capacity as plaintiff cannot establish that a violation of her Fourth Amendment rights occurred. Summary judgment in defendants' favor is therefore appropriate on plaintiff's Fourth Amendment unlawful seizure and malicious prosecutions claims against Norris in both his official and individual capacities.

*First Amendment and Fourteenth Amendment claim*

Plaintiff contends that her First Amendment right to freedom of association and her Fourteenth Amendment right to privacy, personal autonomy in her marriage, and equal protection were violated by Norris. Insofar as this claim is derivative of her Fourth Amendment unlawful seizure or malicious prosecution claim, it fails as summary judgment in favor of defendants is appropriate and there is no genuine issue of material of fact as to whether plaintiff's Fourth Amendment rights were violated. Insofar as this claim is based on Norris' stop of plaintiff's husband for driving under the influence, it also fails. Plaintiff has failed to proffer any evidence in response to the motion for summary judgment which would create a genuine issue of material fact as to whether Norris interfered with plaintiff's right to privacy, free association, or equal protection of the law when he stopped plaintiff's husband's vehicle on suspicion of drunk driving. Norris in his individual capacity is entitled to qualified immunity and summary judgment is appropriate in favor of defendants on this claim.

II. Section 1983 supervisory liability claim against Sheriff Hatcher

A claim for supervisory liability under § 1983 requires a plaintiff to show

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an

"affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Because summary judgment is appropriate in favor of defendants on plaintiff's substantive constitutional claims, she also cannot proceed to trial on a claim that Sheriff Hatcher is liable in his supervisory capacity for Norris' conduct. Further, the record is devoid of evidence which would tend to show that Sheriff Hatcher acted with deliberate indifference or an affirmative causal link between any action by Sheriff Hatcher and an alleged constitutional injury. Nor has plaintiff come forward with any evidence which would tend to show a pattern or practice of discrimination by the Sheriff's Office under *Monell* and its progeny. *See Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978); *see also Wilcoxson v. Buncombe Cty.*, 129 F. Supp. 3d 308, 317 (W.D.N.C. 2014) (North Carolina sheriff is final law enforcement policymaker for county and subject to liability under *Monell*). Summary judgment in favor of Sheriff Hatcher on this claim is therefore appropriate.

III.  State law claims

Plaintiff has alleged three state law claims against all defendants. In his individual capacity, Norris raises the defense of public officer immunity. Public officer immunity protects public officials performing discretionary acts unless their acts are found to be malicious, corrupt, or outside the scope of their duties. *Evans v. Chalmers*, 703 F.3d 636, 657 (4th Cir. 2012).

*Malicious prosecution*

A state law claim for malicious prosecution requires that a plaintiff establish "(1) the defendant initiated the earlier proceeding; (2) malice on the part of the defendant in doing so; (3)

11

lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff." *Beroth Oil Co. v. Whiteheart*, 173 N.C. App. 89, 99 (2005). Because, as discussed above, probable cause supported Cherry's warrant application, plaintiff's malicious prosecution claim fails. Public officer immunity further shields the claim against Norris in his individual capacity as an arrest supported by probable cause is neither malicious nor corrupt. *See Anderson v. Caldwell Cty. Sheriff's Office*, 524 F. App'x 854, 863 (4th Cir. 2013) (where probable cause existed to support arrest warrant individual capacity defendants shielded from liability) (citing *Beeson v. Palombo*, 727 S.E.2d 343, 346 (N.C. App. 2012)).

*Abuse of process*

"The distinction between an action for malicious prosecution and one for abuse of process is that malicious prosecution is based upon malice in causing the process to issue, while abuse of process lies for its improper use after it has been issued." *Barnette v. Woody*, 242 N.C. 424, 431 (1955). "Abuse of process requires both an ulterior motive and an act in the use of the legal process not proper in the regular prosecution of the proceeding." *Stanback v. Stanback*, 297 N.C. 181, 200 (1979) (quotation omitted) *overruled on other grounds by Dickens v. Puryear*, 302 N.C. 437 (1981). "The ulterior motive requirement is satisfied when the plaintiff alleges that the [] action was initiated by defendant or used by him to achieve a collateral purpose not within the normal scope of the process used. The act requirement is satisfied when the plaintiff alleges that once the [] proceeding was initiated, the defendant committed some wilful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter." *Id.* at 201 (citation omitted).

12

Case 7:15-cv-00160-BO   Document 69   Filed 03/29/17   Page 12 of 14

Although plaintiff's deposition testimony, alone, supports her contention that defendant Norris acted with an ulterior motive in his dealings with her and her husband, the record reflects no genuine issue of material fact as to whether the criminal process involving either plaintiff or her husband, who is not a party to this action, once initiated, involved some act by Norris which was not proper in the regular prosecution of the proceeding. Public officer immunity therefore applies and summary judgment in defendants' favor is appropriate on this claim.

*Intentional and negligent infliction of emotional distress*

A claim for intentional infliction of emotional distress requires a plaintiff to demonstrate "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens*, 302 N.C. at 452. A claim for negligent infliction of emotional distress requires a plaintiff to show "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as "mental anguish"), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304 (1990). Severe emotional distress under both theories of relief is defined as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Id.*; *see also Waddle v. Sparks*, 331 N.C. 73, 83 (1992) (adopting same standard for intentional infliction claims).

Plaintiff alleges that she suffers from severe anxiety, trouble sleeping, muscle tension, headaches, and feeling overwhelmed as a result of the criminal proceedings. Plaintiff referenced in response to interrogatories her primary care physician, Dr. Armonio, who diagnosed her with anxiety, [DE 63-9], but in response to the motion for summary judgment has failed to come

forward with any forecast of medical evidence which would support her allegation that her emotional distress has been severe. *See Phillips v. Rest. Mgmt. of Carolina, L.P.*, 146 N.C. App. 203, 214 (2001) (citation omitted); *Waddell*, 331 N.C. at 82 (to survive motion for summary judgment plaintiff must "forecast sufficient evidence of all essential elements of their claims."); *see also Byrd v. Hopson*, 265 F. Supp. 2d 594, 605 (W.D.N.C. 2003) (medical records which fail to disclose treatment for severe distress or consultation of mental health professionals insufficient to resist summary judgment on intentional infliction of emotional distress claim). Summary judgment is therefore appropriate in favor of each defendant on plaintiff's emotional distress claims.

*Claim on bond*

Because the Court has determined that summary judgment in favor of defendants is appropriate on each of plaintiff's claims for liability, plaintiff's claim against the surety is properly dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment [DE 49 & 54] are GRANTED. Defendants' motion to seal [DE 53] is also GRANTED. The clerk is DIRECTED to enter judgment and close the file.

SO ORDERED, this 28 day of March, 2017.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE